O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| EDWARD REZEK,<br><br>    Plaintiff,<br><br>vs.<br><br>CITY OF TUSTIN, ET AL.<br><br>    Defendants. | Case No.: SACV 11-1601-DOC (RNBx)<br><br>**ORDER PARTIALLY GRANTING MOTION FOR PARTIAL SUMMARY JUDGMENT [91]** |

    Before the Court is Defendants' Motion for Partial Summary Judgment ("Motion" or "Mot.") (Dkt. 91). Having considered the written submissions and heard oral arguments on July 22, 2014, the Court GRANTS in part and DENIES in part the Motion.

## I. BACKGROUND

On October 15, 2009, Plaintiff Edward Rezek ("Mr. Rezek") was a pedestrian in a crosswalk on the way to Auld Dubliner Pub, located in the City of Tustin. Def.'s Compendium of Evidence Ex. P ("Rezek Dep.") 35:9–16. Jose Reyes and Hirineo Ibarra, private security guards (together, "Private Security Guards"), stopped their car at the crosswalk. Def.'s Ex. N ("Criminal Trial Tr.") 211:12–14; 213:1–4. Mr. Rezek believed that the Private Security Guards almost struck him. Rezek Dep. 36:7–9. He yelled at the Private Security Guards, "chew[ing] them out" so loudly that bystanders could hear him from sixty feet away. *Id.* 41:17–25; 44:14–16; Criminal Trial Tr. 648:13–15; Decl. of Edward Rezek ("Rezek Decl.") ¶ 3. Mr. Rezek also made hand gestures at the Private Security Guards and hit the hood of their car twice. Rezek Dep. 41:17–25; 42:3–10; 44:14–16. Then, he continued to Auld Dubliner Pub. Rezek Decl. ¶ 4.

### A. Mr. Rezek's Arrest

Defendants Officer Brian Chupp ("Officer Chupp") and Officer Mark Turner ("Officer Turner"), undercover Tustin Police Department officers, observed the interaction between Mr. Rezek and the Private Security Guards.[1] Decl. of Brian Chupp ("Chupp Decl.") ¶ 6; Decl. of Mark Turner ("Turner Decl.") ¶ 6. Officers Chupp and Turner followed Mr. Rezek to Auld Dubliner Pub. *Id.*[2]

Officer Chupp tapped Mr. Rezek on the shoulder and told Mr. Rezek that he wanted to talk. Rezek Decl. ¶ 4. Officer Chupp then grabbed Mr. Rezek's arm and walked him toward a sidewalk, where Officer Turner was standing with the Private Security Guards. *Id.* Officer Chupp asked the Private Security Guards, "[i]s this the as*hole who hit your car?" *Id.* One of the Private Security Guards answered "yes" and Mr. Rezek said, "that's the guy who nearly hit me in the crosswalk!" *Id.*

---

[1] This fact is disputed by Mr. Rezek, who argues that the officers would not have asked him certain questions if they had witnessed the scene. Pl.'s Responses to Separate Statement (Dkt. 100-1) at 3. However, the fact that the officers asked a witness to confirm Mr. Rezek's identity does not raise the inference that the officers did not witness the incident themselves. The Court finds that Mr. Rezek has not raised a genuine dispute that the officers did not see what they declare to have seen. In any case, the question of whether the officers personally witnessed the underlying facts of the vandalism charge is immaterial, given that Mr. Rezek was eventually convicted of vandalism.

[2] Again, Mr. Rezek disputes this fact, but the Court finds that the dispute is not genuine. *See id.*

1  Officers Chupp and Turner then threw Mr. Rezek into a planter that was adjacent to the
2  sidewalk outside the pub. *Id.* He received no explanation as to why he was being arrested. *Id.*
3  Instead, his face was placed in the dirt, his right arm was wrenched above his shoulder blades,
4  and he was choked until he blacked out. *Id.* When Mr. Rezek regained consciousness, he was
5  handcuffed and complained of pain in his arm, and so the officers called the paramedics.
6  Rezek Decl. ¶ 4; Chupp Decl. ¶ 9; Turner Decl. ¶ 9; Decl. of Jason Muro ("Muro Decl.") ¶ 9.[3]

7  Mr. Rezek pleaded with the officers to gather the identities of numerous civilian
8  witnesses. Rezek Decl. ¶ 4. However, the officers told him that he "didn't need any" and
9  tightened the handcuffs. *Id.*

10  Once Mr. Rezek was in custody, Officer Jason Muro ("Officer Muro") arrived at the
11  scene. Rezek Decl. ¶ 4; Pl.'s Ex. C. One of the Private Security Guards, Jose Reyes ("Mr.
12  Reyes"), identified Mr. Rezek as the person who had hit the security car. Criminal Trial Tr.
13  867:14–20; Rezek Dep. 78:9–19; Muro Decl. ¶ 7. Mr. Reyes signed a citizen's arrest form.
14  Criminal Trial Tr. 230:4–8, 230:27–231:3, 309:17–21; Muro Decl. ¶ 8; Pl.'s Ex. A ("Citizen's
15  Arrest Form"). Later, Mr. Reyes testified that he was not asked by any officer to fabricate
16  evidence. Criminal Trial Tr. 233:27–234:7.

17  Eventually, Officer Muro took Mr. Rezek to the hospital, where he was informed that his
18  right elbow was fractured. Rezek Decl. ¶ 4.

19  **B. Investigation, Criminal Complaint, and Trial**

20  After Mr. Rezek was treated at the hospital, Officer Muro drove him to the Tustin Police
21  Department station. Rezek Decl. ¶ 4. Officer Muro interviewed Mr. Rezek. Criminal Trial Tr.
22  230:9–23; Muro Decl. ¶ 7. Officer Muro investigated the incident and prepared the police
23  report. Criminal Trial Tr. 865:23–866:8; Chupp Decl. ¶ 9; Turner Decl. ¶ 9; Muro Decl. ¶ 9.
24  Officer Muro's arrest report contained no facts relating to Mr. Rezek resisting arrest, other than
25  the fact that Mr. Rezek complained of pain. Pl.'s Ex. A.

---

[3] Mr. Rezek speculates that it was at this time that the officers conspired with the Private Security Guards to fabricate details about the incident. However, this self-serving speculation does not raise a genuine dispute.

-3-

1       Officer Chupp prepared a supplement to Officer Muro's report, detailing what he had
2 personally observed. Muro Decl. ¶ 10; Chupp Decl. ¶ 10; Pl.'s Ex. C ("Def. Chupp's Suppl.
3 Report"). This report contained a firsthand account of Mr. Rezek resisting arrest. Def.
4 Chupp's Suppl. Report. Officer Turner did not prepare a supplement to the police report.
5 Turner Decl. ¶ 10.

6       In a 'use of force report' written by Sergeant Del Pickney, Officers Chupp and Turner
7 reported that they identified themselves as police officers to Mr. Rezek, they placed his right
8 arm into a rear wrist lock so that he could be handcuffed, Mr. Rezek attempted to spin away,
9 they took him to the ground, and Officer Turner placed his arm around Mr. Rezek's neck. Pl.'s
10 Ex. J.

11       Officer Chupp directed Officer Muro to book Mr. Rezek on a resisting arrest charge,
12 providing the facts surrounding the arrest. Pl.'s Ex. C. Officer Muro cited Mr. Rezek and
13 released him in the early morning hours of October 16, 2009. Muro Decl. ¶ 9; Def.'s Ex. B
14 ("Citation"). Officer Muro requested that the District Attorney file a criminal complaint
15 against Mr. Rezek. Muro Decl. ¶ 10; Def,'s Ex. D ("Request").

16       On January 12, 2010, a criminal complaint was filed against Mr. Rezek by the District
17 Attorney. Def.'s Ex. L ("Criminal Minutes") at 1. The complaint charged Mr. Rezek with
18 vandalism and resisting arrest. *Id.*

19       On February 5, 2011, Mr. Rezek went to trial on the two charges. *Id.* at 2. Officers
20 Chupp and Turner both testified at trial, providing facts that supported both charges. Ex. D, E.
21 At the conclusion of the trial, the jury found Mr. Rezek guilty of the vandalism charge and
22 acquitted him of the resisting arrest charge. Criminal Minutes at 3; Def.'s Ex. M ("Jury
23 Verdicts").

24     **II.    LEGAL STANDARD**

25       Summary judgment is proper if "the movant shows that there is no genuine dispute as to
26 any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.
27 56(a). Summary judgment is to be granted cautiously, with due respect for a party's right to
28 have its factually grounded claims and defenses tried to a jury. *Celotex Corp. v. Catrett*, 477

U.S. 317, 327 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The court must view the facts and draw inferences in the manner most favorable to the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1992); *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1161 (9th Cir. 1992). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact for trial, but it need not disprove the other party's case. *Celotex*, 477 U.S. at 323. When the non-moving party bears the burden of proving the claim or defense, the moving party can meet its burden by pointing out that the non-moving party has failed to present any genuine issue of material fact as to an essential element of its case. *See Musick v. Burke*, 913 F.2d 1390, 1394 (9th Cir. 1990).

Once the moving party meets its burden, the burden shifts to the opposing party to set out specific material facts showing a genuine issue for trial. *See Liberty Lobby*, 477 U.S. at 248-49. A "material fact" is one which "might affect the outcome of the suit under the governing law . . . ." *Id.* at 248. A party cannot create a genuine issue of material fact simply by making assertions in its legal papers. *S.A. Empresa de Viacao Aerea Rio Grandense v. Walter Kidde & Co., Inc.*, 690 F.2d 1235, 1238 (9th Cir. 1982). Rather, there must be specific, admissible evidence identifying the basis for the dispute. *Id.* The court need not "comb the record" looking for other evidence; it is required only to consider evidence set forth in the moving and opposing papers and the portions of the record cited therein. Fed. R. Civ. P. 56(c)(3); *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001). The Supreme Court has held that "[t]he mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for [the opposing party]." *Liberty Lobby*, 477 U.S. at 252.

**III.  ANALYSIS**

**A. 41 U.S.C. § 1983: Malicious Prosecution**

Mr. Rezek claims that Defendants are liable under 42 U.S.C. § 1983 for deprivation of a variety of constitutional rights. Third Am. Compl. ("TAC") ¶¶ 9–19. Defendants move for partial summary judgment, insofar as Mr. Rezek's § 1983 claim is predicated on allegations

1  that the officers conspired to maliciously prosecute Mr. Rezek for resisting arrest.  *See* Mot. at
2  5–9.

3       A plaintiff may bring an action under 42 U.S.C. § 1983 to redress violations of his
4  "rights, privileges, or immunities secured by the Constitution and [federal] laws" by a person or
5  entity, including a municipality, acting under the color of state law.  42 U.S.C. § 1983; *Monell*
6  *v. Dep't of Social Servs.*, 436 U.S. 658, 690–95 (1978).  In order to prevail on a § 1983 claim of
7  malicious prosecution, a plaintiff "must show that the defendants prosecuted [him] with malice
8  and without probable cause, and that they did so for the purpose of denying [him] equal
9  protection or another specific constitutional right."  *Freeman v. City of Santa Ana*, 68 F.3d
10 1180, 1189 (9th Cir. 1995).  In addition, plaintiffs must allege and prove the "termination of the
11 prior criminal proceeding in favor of the accused."  *Heck v. Humphrey*, 512 U.S. 477, 483
12 (1994).  Malicious prosecution actions are not limited to suits against prosecutors, and may be
13 brought against other persons who have wrongfully caused the charges to be filed.  *Galbraith v.*
14 *Cnty. of Santa Clara*, 307 F.3d 1119, 1126–27 (9th Cir. 2002).

15      Mr. Rezek was charged for vandalism and resisting arrest.  Criminal Minutes at 2.  At
16 the outset, the Court notes that Mr. Rezek cannot claim that he was maliciously prosecuted for
17 vandalism, a charge on which he was convicted.  *See Heck*, 512 U.S. at 483.  However, he can
18 claim that he was maliciously prosecuted for resisting arrest because he was ultimately
19 acquitted on that charge.  *See Poppell v. City of San Diego*, 149 F.3d 951, 963 (9th Cir. 1998)
20 ("[A] prosecution can be malicious with respect to some counts in a complaint even though
21 other counts resulted in a conviction.").  Therefore, the central question is whether there is any
22 genuine dispute as to any material fact that Mr. Rezek was maliciously prosecuted for resisting
23 arrest.  *See* Fed. R. Civ. P. 56(a).

24      Defendants argue that Officers Chupp and Turner cannot be liable for malicious
25 prosecution because the district attorney exercised his independent judgment in filing charges
26 against Mr. Rezek.  In *Smiddy v. Varney*, the Ninth Circuit established a rebuttable presumption
27 that "the prosecutor filing the complaint exercised independent judgment in determining that
28 probable cause for an accused's arrest exists at that time."  665 F.2d 261, 266–67 (9th Cir.

1981).  This presumption can be rebutted in a number of ways, including a showing that the officers presented "the district attorney [with] information known by them to be false[.]"  *Id.*; *see also Beck v. City of Upland*, 527 F.3d 853, 862–63 (9th Cir. 2008) (circumstances in which the presumption is rebutted "include situations in which the prosecutor . . . was given false information").  Here, the Court is presented with conflicting testimony from Mr. Rezek on the one hand, and Officers Chupp and Turner on the other: Mr. Rezek declares that he did not resist arrest; Officers Chupp and Turner declare that he did.  *Compare* Rezek Decl. ¶ 4, *with* Chupp Decl. ¶ 8, Turner Decl. ¶ 8.  On a motion for summary judgment, the Court draws all reasonable inferences in favor of the non-movant and, therefore, the Court finds that there is a genuine issue as to whether Officers Chupp and Turner provided false information regarding Mr. Rezek's charge of resisting arrest.  *See Celotex*, 477 U.S. at 323.

In light of Mr. Rezek's testimony that Officers Chupp and Turner provided false information to the district attorney, the Court finds that Mr. Rezek has rebutted the *Smiddy* presumption that the prosecutor exercised independent judgment.  *See Smiddy*, 665 F.2d at 266–67 (noting that a showing that the district attorney was provided false information rebuts the presumption); *Beck*, 527 F.3d at 862–63 (same); *Galbraith*, 307 F.3d at 1126–27 (same).[4]

Defendants also argue that Mr. Rezek cannot sustain a malicious prosecution claim against Officers Chupp and Turner because neither of them filed the police report or requested that the district attorney prosecute Mr. Rezek.  Mot. at 6; *see also* Opp'n at 7 ("It is undisputed that Officer Muro [a non-party] requested the District Attorney filing of the resisting arrest] count based on what [Officers] Chupp and Turner told him[.]").  However, as the Ninth Circuit has explained, "the presumption of prosecutorial independence does not bar a subsequent §

---

[4] Defendants devote a good deal of briefing to describing *Beck* and its impact on the *Smiddy* presumption.  *See* Reply at 1–4.  The Court certainly agrees that *Beck* did not overrule *Smiddy*.  *See Beck*, 527 F.3d at 865 (noting that it need not decide whether *Smiddy* is overruled).  However, Defendants then appear to argue that there are *only* two conditions under which the *Smiddy* presumption is rebutted: when a prosecutor invokes a privilege, and where a prosecutor did not conduct an independent investigation.  *See* Reply at 2–3 (citing *Beck*, 527 F.3d at 869–70).  This is a misreading of *Beck*.  In the section discussed by Defendants, the Ninth Circuit explicitly stated that it is not considering "whether the evidence Beck presented was sufficient to meet the plaintiff's *Smiddy I* burden of rebutting the presumption of prosecutorial independence."  527 F.3d at 869.  Rather, the Ninth Circuit made clear that the presumption never arises when the prosecutor claims a privilege, "refus[ing] to answer [questions that] are obviously central to the presumption of independent judgment that underlies *Smiddy I*'s causal analysis."  *Id.* at 870.  The Court understands Mr. Rezek's argument to be that he has rebutted the *Smiddy* presumption, not that the *Smiddy* presumption is inapplicable.

-7-

1983 claim against state or local officials who . . . knowingly provided misinformation to [the prosecutor] . . . or otherwise engaged in wrongful or bad faith conduct that was actively instrumental in causing the initiation of legal proceedings." *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1068 (9th Cir. 2004).  The Court finds that there is a genuine dispute that the false information provided by Officers Chupp and Turner was "actively instrumental in causing the initiation of legal proceedings."  *See id.*; *see also Barlow v. Ground*, 943 F.2d 1132, 1137 (9th Cir. 1991) ("[The police officer defendants] can also be liable if they made false reports to the prosecutor, omitted material information from the reports, or otherwise prevented the prosecutor from exercising independent judgment.").

In sum, the Court finds that the *Smiddy* presumption of independent prosecutorial judgment applies, that the presumption was rebutted by Mr. Rezek's showing that there is a genuine dispute that Officers Chupp and Turner provided false information regarding the resisting arrest charge, and that there is a genuine dispute that the false information was "actively instrumental in causing the initiation of legal proceedings."  Therefore, the Motion is DENIED as to the § 1983 claim.[5]

### B. *Monell* and Supervisory Liability

Defendants move for summary judgment on Mr. Rezek's claim of county liability under *Monell*, 436 U.S. 658, and supervisory liability of Chief Jordan.  Mot. at 10–13.  Mr. Rezek explains that when he met and conferred with Defendants, he offered to dismiss those claims.  Opp'n at 16–17.  He now formally abandons those claims.  *Id.*  Therefore, the Court GRANTS the Motion as to *Monell* and supervisory liability.

---

[5] The Court does, however, grant the Motion as to any assertion that Officers Chupp and Turner entered into a conspiracy with anyone other than themselves.  The fact that they present the same narrative, which Mr. Rezek insists is false, is sufficient to raise a reasonable inference that they have entered into a self-serving agreement to falsely charge Mr. Rezek with resisting arrest.  *See Woodrum v. Woodward Cnty.*, 866 F.2d 1121, 1126 (9th Cir. 1989).  However, Mr. Rezek has nothing but speculation to support his assertion that Officers Chupp and Turner involved anyone else in the conspiracy.  For example, Mr. Rezek asserts that while he was allegedly unconscious, Officers Chupp and Turner conspired with the Private Security Guards.  *See* Rezek Decl. ¶ 4.  However, Mr. Rezek plainly has no basis for this speculation and the Private Security Guard's citizen's arrest pertained only to Mr. Rezek's vandalism charge, for which Mr. Rezek was convicted.  *See* Def.'s Ex. A.  There is simply no evidence to suggest that Officers Chupp and Turner entered into any sort of unlawful agreement with anyone, except between one another.  Accordingly, the Court GRANTS the Motion, to the extent that Mr. Rezek alleges that Officers Chupp and Turner entered into a conspiracy with anyone other than themselves.

### C. False Arrest and Imprisonment

Mr. Rezek asserts that he was falsely arrested and imprisoned by Defendants. TAC ¶¶ 27–31. Defendants move for summary judgment on his false arrest and imprisonment claim. Mot. at 13–14.

Defendants first argue that they are entitled to summary judgment because, as a matter of law, they cannot be liable for an arrest made pursuant to a citizen's arrest lodged by Mr. Reyes, one of the Private Security Guards. *Id.* (citing *Arpin v. Santa Clara Valley Trans. Agency*, 261 F.3d 912, 920–21 (9th Cir. 2001)). However, Mr. Rezek argues that he was arrested prior to the citizen's arrest. *See* Opp'n at 12–14. The Court need not decide the issue of when, precisely, Mr. Rezek was arrested because Defendants have shown that there is no genuine dispute about whether Officers Chupp and Turner had probable cause to arrest Mr. Rezek for vandalism.

When a plaintiff has shown that he was arrested without a valid warrant, then "the burden shifts to the defendant to provide some evidence that the arresting officers had probable cause for a warrantless arrest." *Dubner v. City & Cnty. of San Francisco*, 266 F.3d 959, 965 (9th Cir. 2001). "Probable cause exists when 'under the totality of the circumstances known to the arresting officers, a prudent person would have concluded that there was a fair probability that [the suspect] had committed a crime.'" *Luchtel v. Hagemann*, 623 F.3d 975, 979 (9th Cir. 2009) (quoting *United States v. Smith*, 790 F.2d 789, 792 (9th Cir. 1986)). This inquiry, in turn, requires an examination of state law. *Michigan v. DeFillippo*, 443 U.S. 31, 36 (1979). Under California law, criminal vandalism includes the malicious damaging of any personal property that does not belong to the person. Cal. Pen. Code § 594(a).

Here, Officers Chupp and Turner both declare that they observed Mr. Rezek shout at the Private Security Guards and hit the hood of their car. Chupp Decl. ¶ 6; Turner Decl. ¶ 6. Officer Chupp explains:

> As we [Officers Chupp and Turner] were standing at the red light, I heard a loud male voice yelling and I heard what sounded like something hitting metal. When I looked up and across the street I saw a man, who I later found out was Plaintiff

-9-

|   |   |
|---|---|
| 1 | Rezek, standing in the crosswalk with his arms raised in the air, yelling at the |
| 2 | driver of the vehicle that was stopped at the crosswalk.  I could not make out the |
| 3 | words he was saying but as I watched him I saw one hand come down in a |
| 4 | punching motion on the hood of the vehicle.  I only saw Rezek strike the car one |
| 5 | time although based on what I heard I believe the car was struck by Rezek two |
| 6 | times. |

Chupp Decl. ¶ 6.  Officer Turner explains:

> On October 15, 2009, at approximately 9:20 p.m., as Officer Chupp and I were waiting to cross a street to head back toward the Auld Dubliner [Pub] I suddenly heard a loud noise and yelling and I observed a man hit a vehicle that was stopped at a crosswalk and yell at the driver.  I observed this man, who was later identified as Plaintiff Rezek, pound his fist one time on the hood of the car.

Turner Decl. ¶ 6.

In response to the declarations of Officers Chupp and Turner, Mr. Rezek presents two arguments.  First, he argues that Defendants must establish that they had probable cause to arrest Mr. Rezek for both vandalism and resisting arrest, the charges that were eventually brought against him.  Opp'n at 13.  However, Mr. Rezek directs the Court to no Ninth Circuit precedent on this question.  *See id.*  In a Second Circuit opinion written by then-Judge Sotomayor, the court explained that "a claim for false arrest turns only on whether probable cause existed to arrest a defendant, and that it is not relevant whether probable cause existed with respect to each individual charge, or, indeed, any charge actually invoked by the arresting officer at the time of the arrest." *Jaegley v. Couch*, 439 F.3d 149, 154 (2d Cir. 2006) (following *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004)) (Sotomayor, J.).  The Court follows this reasoning and holds that Defendants need only establish that they had probable cause to arrest Mr. Rezek for vandalism.

Second, Mr. Rezek argues that, "[n]either Turner nor Chupp had probable cause to arrest Rezek for allegedly violating the vandalism statute because they had no knowledge there was damage to the IPC vehicle until after the seizure."  Opp'n at 14.  Here, Mr. Rezek admits that

he shouted at the Private Security Guards and hit the hood of their vehicle; indeed, he was eventually convicted of doing so. *See* Rezek Decl. ¶ 4. Moreover, Officers Chupp and Turner declare that they observed Mr. Rezek hit the hood of the vehicle, and Mr. Rezek offers only a bald assertion that they are lying because they eventually asked Mr. Reyes, one of the Private Security Guards, to identify Mr. Rezek. *See* Chupp Decl. ¶ 6; Turner Decl. ¶ 6; Pl.'s responses to Separate Statement of Undisputed Facts at 3. The Court finds that the uncontroverted evidence shows that Officers Chupp and Turner observed Mr. Rezek shout at the Private Security Guards and then hit the hood of their vehicle, and those facts raised a "fair probability that [the suspect] had committed [vandalism by damaging the property of another].'" *See Luchtel*, 623 F.3d at 979; Cal. Pen. Code § 594(a). Therefore, there was probable cause to arrest Mr. Rezek for vandalism and Defendants cannot be liable for false arrest.

Accordingly, the Court GRANTS the Motion as to Mr. Rezek's California state law claim for false arrest and imprisonment, and Mr. Rezek's § 1983 claim insofar as it is predicated on a theory of false arrest or imprisonment.

### D. Intentional Infliction of Emotional Distress

Finally, Mr. Rezek asserts that Defendants are liable for intentional infliction of emotional distress. TAC ¶¶ 37–42. Defendants move for summary judgment on that claim because "Government Code section 821.6 immunizes police officers even when their activities are negligent, malicious, or lacking in probable cause." Mot. at 16–17. The Court agrees.

Under California law, "[a] public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without probable cause." Cal. Gov. Code § 821.6. The California Supreme Court has explained that "a police officer may be held liable for false arrest and false imprisonment, but not for malicious prosecution." *Asgari v. City of Los Angeles*, 15 Cal. 4th 744, 757 (1997) (discussing California Government Code section 821.6). In *Asgari*, the court explained that "[f]alse arrest or imprisonment and malicious prosecution are mutually inconsistent concepts, the former relating to conduct that is without valid legal authority and the latter to conduct where there is valid process or due authority." *Id.*

-11-

(quotations and citations omitted). In short, police officers are immune from California state law claims for malicious prosecution.

The Court GRANTS the Motion insofar as Mr. Rezek's IIED claim is predicated on either false arrest, on which the Court entered summary judgment in Defendants' favor, or malicious prosecution, which is barred by California Government Code section 821.6, *see id.*

## IV. DISPOSITION

For the reasons explained above, the Court DENIES in part and GRANTS in part the Motion for Partial Summary Judgment.

- The Motion is DENIED as to Mr. Rezek's § 1983 claim regarding malicious prosecution.
- The Motion is GRANTED as to Mr. Rezek's § 1983 claim regarding conspiracy, to the extent that it is predicated on allegations that Officers Chupp and Turner entered into a conspiracy with anyone other than themselves.
- The Motion is GRANTED as to *Monell* and supervisory liability.
- The Motion is GRANTED as to Mr. Rezek's state law claim for false arrest and imprisonment.
- The Motion is GRANTED as to Mr. Rezek's claim for intentional infliction of emotional distress, to the extent that it is predicated on allegations of false arrest, false imprisonment, malicious prosecution, or conspiracy to maliciously prosecute.
- The Court also notes that Mr. Rezek's § 1983 claim regarding the use of unreasonable force was not at issue in this Motion and will be resolved at trial.

DATED: July 25, 2014

DAVID O. CARTER
UNITED STATES DISTRICT JUDGE